RENDERED: FEBRUARY 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1012-MR

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY                                                                APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE MELISSA L. BELLOWS, JUDGE
                        ACTION NO. 23-CI-000688


GLORIA E. COMPANIONI; ISAIR H.
LUBO-RODRIGUEZ; AND
MERCEDES H. CERVANTES                                                   APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: Allstate Property and Casualty Insurance Company

("Allstate") appeals from the denial of its petition for an Examination Under Oath

("EUO") pursuant to KRS[1] 304.39-280(3). We vacate the total denial of the

---

[1] Kentucky Revised Statutes.

petition for an EUO and remand for the trial court to issue a new order recognizing that Allstate is entitled to conduct an EUO at least as to purely accident-related matters.  We also direct the trial court to reconsider on remand whether good cause exists to permit inquiries relating to medical treatment and solicitation and to clarify the scope of permissible inquiry pursuant to *Deadwyler v. Grange Property and Casualty Insurance Company*, 697 S.W.3d 539 (Ky. App. 2024).

**FACTS**

Appellee, Gloria Companioni, was driving a car insured by Allstate which was in an accident with another car.  Appellees Isair Lubo-Rodriguez and Mercedes Cervantes were allegedly riding in the car Companioni was driving when the accident happened.  All three Appellees resided in Kentucky.

Police investigated the accident and prepared a report.  The report identifies both Companioni and the driver of the other car by name.  The report also indicates that there were three passengers in the car driven by Companioni, but it does not identify the passengers by name.  The police report does not address whether any injuries resulted from the accident.

Four days after the accident, all three Appellees commenced care at Total Health Chiropractic and Rehab ("Total Health").  The next day (five days after the accident), Appellees submitted Personal Injury Protection ("PIP") applications through counsel.  Appellees requested reimbursement for medical

-2-

treatment resulting from the accident and for any coverage available, including coverage for basic reparations benefits ("BRB").

Appellees agreed to submit to an EUO, but Allstate cancelled the EUO the day before it was scheduled to take place. Allstate's counsel stated in email correspondence that Allstate elected to file a petition so it could investigate fully and obtain direction from the court.

Shortly thereafter, Allstate filed a petition for an EUO pursuant to KRS 304.39-280(3). Allstate stated that after a preliminary investigation, it had concerns about: 1) how the accident happened given the lack of detailed information provided by Appellees; 2) the severity of the injuries claimed given photographs showing only minor damage; 3) whether a licensed chiropractor provided treatment; 4) whether Total Health billed for services not rendered; 5) whether Appellees received treatment to body areas that were not injured in the accident; and 6) whether Appellees were unlawfully solicited.

Allstate pointed out it has a duty to investigate suspected insurance fraud, citing, *e.g.*, KRS 304.47-080. Allstate also cited KRS 367.4082, which prohibits healthcare providers from soliciting persons involved in motor vehicle accidents within 30 days of such accidents. And it cited KRS 367.4083(1), which states charges for healthcare services by a provider in violation of KRS 367.4082 are void.

Allstate also argued it had a right to question Appellees about the accident and to gather more information pursuant to policy provisions. Allstate contended it was entitled to ask about details about the accident, injuries sustained, and medical treatment received. It also asserted Appellees had a contractual obligation to submit to EUOs, to cooperate with the claim investigation, and to provide relevant documentation.

Allstate stated it was submitting the petition to obtain court approval to obtain Appellees' testimony about medical treatment relating to the accident, citing KRS 304.39-280(3) and *State Farm Mutual Automobile Insurance Company v. Adams*, 526 S.W.3d 63 (Ky. 2017). It asserted questions about coverage, injuries and medical treatment would only extend the examination by 30 minutes.

Allstate stated it had made no final decision about Appellees' insurance claims and that it wished to complete its investigation by obtaining Appellees' testimony about the following seven topics:

    a. Standard background information, including, but not limited to, name, address, previous addresses, co-residence, education history, work history, etc.;

    b. Detailed testimony of all facts and circumstances regarding the subject accident;

    c. Complete testimony relative to all claims, injuries, and bills which Respondents [Appellees] are submitting as a result of this subject accident;

d. Detailed testimony regarding any communications between Respondents and others regarding this accident;

e. Detailed testimony regarding pre-existing medical conditions and injuries and related bills arising out of prior accidents;

f. Detailed testimony regarding claim history; and

g. Detailed testimony regarding solicitation.

(Record on Appeal ("R."), p. 8.) (These appear to be the same seven requested areas of inquiry – verbatim – as that sought in *Deadwyler*. *See* 697 S.W.3d at 542.)

Appellees filed a response to Allstate's petition. They pointed out Allstate first requested EUOs two months after the accident, which was past the time Allstate was required to begin paying BRB in their estimation.

Appellees asserted they cooperated with Allstate's policy and conditions precedent for coverage by agreeing to an EUO and providing a police report. They argued Allstate waived its policy provision requiring cooperation with investigations by cancelling the EUO and petitioning the trial court without first conducting a recorded statement, requesting medical records, or completing the EUO.

Appellees argued Allstate's requested EUO inquiries exceeded the proper scope of EUOs under Kentucky law. They contended Allstate could only

make inquiries in EUOs about accident-related matters and should use other tools available under the Motor Vehicle Reparations Act ("MVRA") to obtain medical information, citing *Adams*, 526 S.W.3d at 63. They argued it would be improper to ask about medical treatment or solicitation in an EUO. They asserted the only remedy for solicitation was a lawsuit against the medical provider under the Consumer Protection Act.

The trial court issued orders[2] denying Allstate's petition for an EUO in mid-June 2023. It found Allstate failed to show good cause, stating Allstate presented no affirmative evidence or factual arguments warranting a judicially compelled deposition or EUO. It also found Allstate had not cited any contractual provision compelling Appellees to provide information in an EUO.

Allstate timely filed a CR[3] 59.05 motion to alter, amend, or vacate and alternatively requested additional findings pursuant to CR 52.02. In its motion, Allstate took issue with the finding that it did not cite a contractual provision compelling an EUO. It quoted a policy provision stating that claimants must cooperate with its efforts to investigate accidents and settle claims, allow Allstate "to take signed and recorded statements, including sworn statements and

---

[2] Two very similar if not entirely identical orders denying the petition for an EUO were entered by the trial court in mid-June 2023 apparently due to clerical error.

[3] Kentucky Rules of Civil Procedure.

-6-

examinations under oath . . . and to answer all reasonable questions . . ." and provide authorization to obtain medical reports and other records. It attached a copy of the policy to its Motion to alter, amend, or vacate.

Allstate also took issue with the trial court's finding of lack of good cause, pointing to several paragraphs of its petition and asserting the trial court failed to address whether the content of these paragraphs – individually or together – showed good cause.

The trial court issued an order vacating its prior orders denying the petition in late June 2023. In August 2023, the trial court issued an order denying Allstate's petition for an EUO.

The August 2023 order began by noting Allstate's argument that it needed an EUO to conduct a full investigation of the accident, then stated:

> Allstate made this petition to question Respondents regarding a variety of issues concerning their claim for injury after a car accident and subsequent treatment at a chiropractor. Allstate has requested information on whether treatments at the chiropractor were fraudulent or performed on the basis of solicitation of the clients. Respondents objected to the petition on the basis of inconvenience and lack of good cause shown.

After noting relevant authority including *Adams*, 526 S.W.3d at 63, the trial court stated: "the insurers are required to show more than just a *concern* that the violations have occurred" to show good cause and determined Allstate failed to go beyond expressing concerns about alleged violations. (Emphasis in original.)

The trial court found no good cause to warrant its issuing an order compelling discovery (specifically a deposition or EUO), again stating Allstate presented no affirmative evidence or factual arguments to justify such an order. It also again stated that Allstate had not cited any contractual provision which would compel Appellees to provide information in an EUO. So, it denied Allstate's petition. Allstate timely appealed from this order.

## ANALYSIS

Allstate argues the trial court erred in denying its petition for an EUO pursuant to KRS 304.39-280(3). KRS 304.39-280 concerns the disclosure of information relevant to BRB claims. KRS 304.39-280(1) provides a procedure for the discovery of names and addresses of healthcare providers and written medical reports and records upon the claimant's authorization.[4]

---

[4] KRS 304.39-280(1) provides in pertinent part:

> Upon request of a basic or added reparation claimant or reparation obligor, information relevant to a claim for basic or added reparation benefits shall be disclosed as follows:
>
> . . .
>
> > (b) The claimant shall deliver to the reparation obligor a copy of every written report, previously or thereafter made, relevant to the claim, and available to him, concerning any medical treatment or examination of a person upon whose injury the claim is based and the names and addresses of physicians and medical care facilities rendering diagnoses or treatment in regard to the injury or to a relevant past injury, and the claimant shall authorize the reparation obligor to inspect and copy relevant records of physicians and of hospitals, clinics, and other medical facilities.

-8-

KRS 304.39-280(3) provides:

> In case of dispute as to the right of a claimant or reparation obligor to discover information required to be disclosed, the claimant or reparation obligor may petition the Circuit Court in the county in which the claimant resides for an order for discovery including the right to take written or oral depositions. Upon notice to all persons having an interest, the order may be made for good cause shown. It shall specify the time, place, manner, conditions, and scope of the discovery. To protect against annoyance, embarrassment, or oppression, the court may enter an order refusing discovery or specifying conditions of discovery and directing payment of costs and expenses of the proceeding, including reasonable attorney's fees.

### Standard of Review

As we recently stated in *Deadwyler*: "The issue as to whether an insurer may subject a person seeking coverage to an EUO is a question of law and is thus reviewed *de novo*." 697 S.W.3d at 543 (citing *Adams*, 526 S.W.3d at 65). On the other hand, we review a trial court's determination of whether good cause exists for it to issue "an order for discovery including the right to take written or

---

(c) A physician or hospital, clinic, or other medical facility furnishing examinations, services, or accommodations to an injured person in connection with a condition alleged to be connected with an injury upon which a claim is based, upon authorization of the claimant, shall furnish a written report of the history, condition, diagnoses, medical tests, treatment, and dates and cost of treatment of the injured person, and permit inspection and copying of all records and reports as to the history, condition, treatment, and dates and cost of treatment.

-9-

oral depositions" under KRS 304.39-280(3) for abuse of discretion. *Deadwyler*, 697 S.W.3d at 543.

### Trial Court Erred in Finding Allstate Failed to Cite a Contractual Provision Which Required Appellees to Submit to EUOs

Allstate argues error in the trial court's finding that Allstate failed to cite a contractual provision compelling Appellees to submit to EUOs. Allstate points out it attached a copy of the full policy to its motion to alter, amend, or vacate the initial orders denying the petition. We also note that Allstate quoted relevant policy provisions in its motion to alter, amend, or vacate.

Appellees concede that the trial court's finding that Allstate failed to cite a contractual provision about EUOs is in error. However, they contend the error in this finding is harmless. *See* CR 61.01.

Appellees admit in their brief: "Allstate's policy does in fact carry a contractual obligation to sit for an EUO, this is evidenced by the fact that Appellees agreed to sit for and scheduled an EUO with Allstate" before Allstate cancelled the EUO and filed the petition. Appellees also assert no one argued to the trial court a lack of contractual obligation to submit to EUOs. They suggest that what was really at issue was not the obligation to submit to an EUO,[5] but the permissible scope of inquiry at an EUO.

_____

[5] Though Appellees argue in their brief that what was at issue was the scope of the EUO, their response to the petition did request that the trial court deny the petition for an EUO in its

-10-

While the main dispute between the parties may be the scope of inquiry at an EUO, the trial court nonetheless totally denied Allstate's petition for an EUO and overlooked contractual provisions allowing Allstate to conduct EUOs. We do not agree that the error in overlooking such contractual provisions is harmless. The order totally denying the request for an EUO cannot stand – partly due to its overlooking contractual provisions about EUOs and partly for other reasons which we address next.

**Blanket Denial of Petition for EUO is Inconsistent with Binding Precedent Including *Adams***

Appellees argue the trial court properly denied the petition based on Allstate's not coming forward with evidence, but merely concerns, about possible statutory violations and therefore not demonstrating good cause for the court to order Appellees to submit to the expansive EUO sought by Allstate. However, the trial court did not merely decline to allow the expansive EUO sought but also denied the petition for EUO in its entirety.

We do not entirely accept Appellees' arguments to affirm the trial court's total denial of the petition for an EUO – not only due to the undisputed existence of policy provisions calling for claimants to submit to EUOs upon Allstate's request but also based on our review of binding precedent including

_____

entirety. Moreover, the trial court did not expressly discuss the fact that Appellees agreed to submit to an EUO in its written order denying the petition.

-11-

*Adams*, 526 S.W.3d at 63. Allstate's petition included a request to inquire into how the accident happened, and it was entitled to inquire into such purely accident-related issues at an EUO, *id*. at 67-68. Allstate also reminded the trial court it sought to obtain accident-related information as well as information relating to its efforts to curtail insurance fraud in its motion to alter, amend, or vacate.[6] But the trial court denied the petition for an EUO in its entirety.

In our view, not only did the trial court overlook policy provisions relating to EUOs, but it also overlooked pertinent authority allowing inquiries into predominantly accident-related issues in EUOs such as *Adams*, 526 S.W.3d at 67-68. In sum, its total denial of the EUO petition cannot stand and must be vacated with the case remanded to the trial court for further proceedings.

Having determined that the trial court erred in denying the petition for an EUO in its entirety and failing to explicitly recognize that Allstate was entitled to at least inquire into how the accident happened at an EUO, we next address the trial court's finding that Allstate failed to show good cause to allow EUO inquiries pertaining to medical treatment and solicitation.

---

[6] After asking for more specific findings about the various issues and allegations set forth in Paragraphs 6 through 13 of the complaint and whether these amount to good cause, the motion to alter, amend or vacate states: "Allstate further contends the reasonings outlined within its Petition are good cause, including curtailing insurance fraud as required by Kentucky law and 'accident-related.'" (R., p. 168.)

**We Vacate the Trial Court's Finding of No Good Cause to Permit Inquiries Pertaining to Medical Treatment and Solicitation for Reconsideration Under Principles Set Forth in *Deadwyler***

While we cannot affirm the total denial of the petition for an EUO, we also do not accept any argument that the trial court was required to allow unlimited inquiry by EUO into all areas about which Allstate wanted to question Appellees.

Instead, based on our review of pertinent authority, we conclude it is necessary to vacate the trial court's total denial of the petition for an EUO. We remand for the trial court to issue a new order allowing an EUO. We further remand for the trial court to consider anew whether Allstate showed good cause to allow questioning pertaining to medical treatment and to solicitation.

Rather than discuss in detail all arguments made or authorities cited in the parties' briefs, we direct the trial court's attention to our recent published precedent in *Deadwyler*, 697 S.W.3d at 539, for guidance on remand in determining whether good cause exists to allow EUO inquiries into medical treatment and solicitation.

As we noted in the factual summary of this Opinion, Allstate asked for approval to inquire by EUO into the same seven areas at issue in *Deadwyler*. *See* 697 S.W.3d at 542. It even used the same language in doing so. And despite

some factual differences between this case and *Deadwyler*, the insurers involved expressed similar concerns about possible insurance fraud and solicitation.[7]

The trial court in *Deadwyler* found that good cause existed to permit some questioning via EUO about matters relating to medical treatment and to solicitation. We affirmed its finding of good cause, stating: "establishing good cause is a low hurdle." *Id.* at 544. Nonetheless, we recognized the trial court both had discretion to determine whether good cause existed to permit such questioning and to establish appropriate limits on the scope of such questioning in *Deadwyler*.

In resolving whether the insurer was entitled to inquire into the same seven topics in an EUO as Allstate sought to here, the trial court in *Deadwyler* specifically addressed each requested area of inquiry and allowed only very limited, specific inquiries regarding medical treatment and solicitation:

> The circuit court granted Grange's petition, determining good cause did exist. However, the circuit court limited the scope of Grange's inquiry.
>
> It determined Grange's first and second requests [for background information and accident details] "are generally permissible topics for an EUO" but limited the inquiry to "name, address, previous addresses for past

---

[7] For example, the claimants in *Deadwyler* waited much longer to seek treatment or reimbursement than the claimants here and the *Deadwyler* claimants had given unsworn recorded statements, though there is no mention of their agreeing to submit to an EUO. *See id.* at 541-42. Nonetheless, similarly to Allstate here, the insurer in *Deadwyler* (Grange) stated it had a good-faith basis to believe the same provider (Total Health) engaged in solicitation violating KRS 367.4082, insurance fraud (such as billing for services not rendered) and billing for "services beyond the scope of chiropractic care" and for "services provided by unlicensed individuals." *Id.* at 542.

three (3) years, work history for the past three (3) years, and educational background."

The circuit court determined the third and fifth categories [information relating to submitted claims, injuries and bills from this accident as well as pre-existing conditions and prior accidents] would not be appropriate because they concern medical information Grange could obtain under provisions of the Motor Vehicle Reparations Act (MVRA); however, the circuit court permitted inquiry into the names of medical providers who have rendered treatment to Appellants in the past three years, as well as the dates which Appellants attended appointments.

It determined the fourth and sixth categories [communications with others about accident and claim history], in toto, were impermissible because they were unrelated to the circumstances of the accident, injuries, or whether Appellants' medical treatment is related to the accident.

As to the seventh topic – solicitation – the circuit court determined this topic fell in the gray area between what is a permissible inquiry under *Adams* and what is not. Therefore, the court limited the EUO on the topic of solicitation to the following questions:

1) Were you referred to Total Health within thirty (30) days of the June 13, 2022 motor vehicle collision? If the answer is "no," then the inquiry is over. If the answer is "yes," counsel may ask the next question.

2) If so, what is the name of the person who referred you?

*Id.* at 542-43 (citations to record omitted).

-15-

We decline to require the trial court to issue an order which is identical to the order resolving the petition for an EUO in *Deadwyler*. Trial courts retain discretion to determine whether good cause exists in cases before them to compel an EUO encompassing questions relating to medical treatment and solicitation and to fashion orders properly limiting the scope of such EUO.

We recognized in *Deadwyler* that there was a lack of black letter law to resolve this type of controversy which has previously resulted in some seemingly inconsistent resolutions of similar petitions. *See id.* at 546. However, *Deadwyler* provides guidance for trial courts faced with petitions for approval to inquire into matters of suspected solicitation or insurance fraud in EUOs. Going forward, our circuit courts are bound by our published precedent in *Deadwyler*, especially since there is no Kentucky Supreme Court precedent on this precise issue. *See* SCR[8] 1.040(5); *see also* RAP[9] 41(A). So, we direct the trial court on remand to follow the principles set forth in *Deadwyle*r to resolve whether good cause exists to compel an EUO encompassing questions pertaining to medical treatment and solicitation and to clarify the scope of permissible inquiries.

---

[8] Rules of the Kentucky Supreme Court.

[9] Kentucky Rules of Appellate Procedure.

For example, we direct the trial court's attention to our holding in *Deadwyler* that the permissible scope of inquiry in EUOs is not strictly limited to purely accident-related issues such as how the accident happened. *Id.* at 545 (citing, *e.g., Adams*, 526 S.W.3d at 63).[10]

We also point to our holding that: "regardless of the service offered, asking whether a service provider engaged in solicitation falls entirely outside the scope of medical-related inquiries." We further stated: "Solicitation is simply a business ploy from which consumers are protected by law. KRS 367.4082. So long as the inquiry does not veer into questions regarding the actual provision of medical care, it is not prohibited by statute or case law." *Deadwyler*, 697 S.W.3d at 545.[11]

We also note that in *Deadwyler*: "The circuit court specifically disallowed Grange from inquiring into medical information which Grange could obtain through provisions of the MVRA." *Id.* at 545-46.[12] While we rejected

---

[10] We also cited a recently issued to-be-published opinion for which a motion for discretionary review was filed in the Supreme Court. *See Alvarez v. Allstate Property and Casualty Insurance Company*, No. 2023-CA-0013-MR, 2024 WL 3210270 (Ky. App. Jun. 28, 2024), *mot. for disc. rev. filed* No. 2024-SC-0348 (Ky. Jul. 30, 2024). As of late November 2024, our Supreme Court has not ruled upon the motion for discretionary review of *Alvarez*.

[11] *Compare Alvarez*, 2024 WL 3210270 at *5 (Caldwell, J., dissenting) (expressing concerns that broad inquiries about solicitation such as asking how a claimant sought medical care may, at least under certain circumstances, relate only to purely medical-related issues rather than accident-related issues).

[12] *See also Alvarez*, 2024 WL 3210270, at *3 (Caldwell, J., dissenting) ("Allstate has not requested records related to Alvarez's medical care through the means specifically provided for

-17-

arguments that the trial court in *Deadwyler* erred in finding good cause to allow some inquiry at the EUO into issues of solicitation and medical treatment, we upheld the trial court's allowing very specific, limited inquiries about solicitation and medical treatment for information which could not be obtained through other means under the MVRA. *Id*. at 546.

In the present case, Appellees have asserted Allstate failed to request medical records available under the MVRA prior to seeking court approval for an EUO inquiring into matters of medical treatment and/or solicitation. However, the trial court did not specifically address in its written order whether Allstate had utilized available means to obtain medical information under the MVRA before filing the petition.

We interpret *Deadwyler* to permit the trial court to take into consideration what medical-related information is available to Allstate by other means under the MVRA and whether the parties have taken steps to allow for medical information to be obtained by such other means in determining whether good cause exists to allow inquiry into medical-related issues by EUO. Moreover, even if the trial court finds good cause, *Deadwyler* recognizes that the trial court

in the MVRA. *See* KRS 304.39-280(1)(b)-(c). Therefore, there was no dispute about medical information required to be disclosed prior to the filing of the petition to examine Alvarez under oath, which Allstate indicated was premised partly under KRS 304.39-280(3). But I read KRS 304.39-280 as a whole to only permit depositions about medical issues if there has been a denial of a reparation obligor's requests for medical records to be made available under KRS 304.39-280(1)(b)-(c).").

may set appropriate limits on the scope of such medical-related inquiries. *See also* KRS 304.39-280(3).

We recognize the trial court did not yet have the benefit of our guidance in *Deadwyler* when it ruled on Allstate's petition for an EUO to allow inquiry pertaining to possible insurance fraud and/or solicitation in addition to inquiries about the accident and coverage. But now that *Deadwyler* is final, we direct the trial court to consider its guidance in considering anew whether good cause exists to permit questioning about matters of medical treatment and/or solicitation via EUO and, if so, to establish any appropriate limits on such questioning.

Further arguments in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal.

## CONCLUSION

For the reasons stated herein, we VACATE the trial court's total denial of the EUO petition and REMAND for the trial court to issue a new order allowing an EUO at least regarding purely accident-related issues, to reconsider whether good cause exists to permit inquiries pertaining to medical treatment and solicitation, and to provide direction to the parties as to the permissible scope of inquiry consistent with the principles set forth in *Deadwyler*, 697 S.W.3d at 539.

ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEES:

R. Christian Garrison                    John Patrick Ward, Jr.
Daniel S. Gumm                           Louisville, Kentucky
Eric S. Rice
Louisville, Kentucky